# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>ISAAC PETER JACKSON,<br><br>   Defendant. | No. 16-CR-2059-LTS<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.   INTRODUCTION

The matter now before me is defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. (Doc. 15). The grand jury charged defendant with being a felon in possession of a firearm. (Doc. 2). The charge arose from a traffic stop during which officers conducted a pat-down search and found defendant in possession of a handgun. Defendant alleges the officers lacked a reasonable, articulable suspicion to conduct a pat-down search.

The Honorable Leonard T. Strand, Chief United States District Court Judge, referred this motion to me for a Report and Recommendation. On March 1, 2017, I held an evidentiary hearing on defendant's motion. I admitted into evidence government's Exhibits 1 (traffic stop videos), 2 (police reports), and 3 (the Report and Recommendation regarding a motion to suppress in *United States v. McLemore*, 16-CR-2048 and *United States v. Rode*, 16-CR-2050), and defense exhibit A (this court's order declining to adopt the Report and Recommendation in the same cases). Waterloo Police Officers Diana Del Valle and Kyle Jurgensen testified for the United States. Defendant did not call any witnesses.

For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to suppress.

## II. FINDINGS OF FACT

At approximately 10:48 p.m., on November 9, 2016, Waterloo Police Officers Diana Del Valle and Jamie Sullivan were on patrol in a car when they observed another car attempt to turn the wrong way down a one-way street. Defendant was driving that car. Defendant began to turn down the one-way street, realized his mistake, and pulled back into traffic. Officer Del Valle activated the lights on her car to make a traffic stop at about the same time defendant came to a stop at a traffic light. Defendant signaled with his hand that he intended to pull over on the other side of the intersection and Officer Del Valle indicated agreement. Officer Del Valle testified she could see what she described as furtive movements at this time, consisting of defendant appearing to reach over with his left hand toward the center console area. Officer Del Valle saw the same movement again when defendant crossed the intersection and then pulled over to the side of the road.

Defendant stopped in downtown Waterloo, in an area that was well lit, according to Officer Del Valle. During the traffic stop there were other vehicles passing by on the road. From the video recordings (Exhibit 1), the area appears to be reasonably well lighted, although it is still night.

Officers Del Valle and Sullivan got out of their patrol car and approached defendant's car, with Del Valle on the driver's side and Sullivan on the passenger's side. As Del Valle approached defendant's car, she again saw defendant reaching toward the center console area with his left hand. She approached the car from a wider angle because she said she had concerns at this time about her safety. Officer Del Valle instructed defendant to show his hands. Defendant responded something to the effect that he was reaching for his insurance or papers. Officer Del Valle advised defendant that he had

2

started down a one-way street, almost hit a car, and then pulled back into traffic. Defendant acknowledged he had made a mistake and realized it was a one-way street.

When she came up to defendant's window and engaged in a conversation with defendant, Officer Del Valle testified she realized she recognized defendant to be someone suspected to have participated in recent armed robberies of stores in the area. Officers Del Valle and Sullivan were part of a VCAT unit, a violent crime unit of the Waterloo Police Department. Officer Del Valle had, in that capacity, been told by a concerned citizen that defendant was involved as a get-away driver in these robberies and possessed the firearm used in these robberies. When Officer Del Valle approached defendant's window, she saw defendant's left hand shaking. His right arm and hand were in a cast. Officer Del Valle asked defendant if he was nervous and mentioned his shaking hand. Defendant denied that he was nervous and mentioned that his right hand was broken. He did not deny that his hand was shaking. At Officer Del Valle's instructions, defendant retrieved his driver's license; his wallet was later found on the passenger's seat.

After obtaining defendant's license, insurance, and rental car receipt, Officer Del Valle moved to the back of defendant's vehicle and called into dispatch to check on defendant. She also called for a backup officer from the VCAT unit and officer Kyle Jurgensen responded and arrived at the scene. Officer Jurgensen joined Officer Del Valle at the back of defendant's car. Officer Del Valle told Officer Jurgensen that defendant was "making obvious movements toward the center of the car." (Exhibit 1). Officer Jurgensen overheard Officer Del Valle call into dispatch and state defendant's name. Officer Jurgensen recognized defendant's name. Officer Jurgensen used to work at the Blackhawk County Jail and remembered defendant as a particularly long-term inmate at the jail who had been in custody for a trafficking in weapons charge. Officer Jurgensen also recalled being informed verbally as a member of the VCAT team that defendant was a suspect in the recent armed robberies of local stores.

When dispatch reported back that defendant was a valid driver, Officer Jurgensen moved toward the driver's door with the intent to have defendant get out of the vehicle in order to conduct a pat-down search of defendant in the interests of officer safety. When officer Jurgensen approached the driver's side of defendant's car, he could smell the odor of marijuana. When Officer Jurgensen asked defendant to step out of the car, defendant objected and became verbally resistant to stepping out of the car. Ultimately, defendant complied. While conducting a pat-down search of defendant, Officer Jurgensen felt a handgun in defendant's waistband. After securing defendant, Officer Jurgensen removed the handgun, which is the object of the pending indictment. A subsequent search of the vehicle also revealed marijuana and cocaine.

During cross examination of Officers Del Valle and Jurgensen, defendant elicited testimony that Officer Del Valle's and Sullivan's body cameras did not capture any consistent images of defendant or of the interior of the car. Officer Jurgensen's body camera worked initially, but then stopped working at some point; his audio did not work on his car video. Officers Del Valle and Jurgensen also testified that although each stated that at some point during the traffic stop they recognized defendant as a suspect in a string of recent armed robberies, neither officer discussed that fact with the other at the scene and neither included that information in their written reports. Officer Del Valle was not asked why she did not include that information in her written report, but when I asked Officer Jurgensen why he did not include this information in his report, he testified that the investigation into the robberies was ongoing and not his investigation, and so he did not feel it appropriate to include that information in his report.

I found both officers to be credible. Although defendant emphasized that this Court recently found Officer Del Valle not to be credible in her testimony in another case, I was aware of that opinion at the time of this hearing and watched Officer Del Valle carefully during her testimony. She did not hesitate in her answers, I found her demeanor to be open, and she did not appear to exaggerate or shade her testimony. For example, Officer Del Valle never claimed she smelled marijuana; had she wanted to

4

fabricate evidence, she could have simply alleged she smelled marijuana. This would have been especially easy when Officer Jurgensen stated that he smelled marijuana.

Defendant asks the Court to infer that the officers intentionally adjusted their cameras so that they did not capture the events well. All of the officers' body cameras were working for all of the pertinent portions of the contact with defendant. Most of the time, however, the body cameras did not capture images of defendant or the interior of his car. There is nothing about the footage, however, that suggests in any way that the officers were attempting to avoid capturing anything on their body cameras. The officers obviously do not know what images their cameras are capturing at the time. I cannot accept defendant's invitation to speculate that Officers Del Valle, Sullivan, and Jurgensen all manipulated their body cameras to either not capture the scene or to stop working. Defendant further invites the Court to speculate they each did so because had the cameras captured what happened, it would be inconsistent with the officers' testimony. There is nothing to support this speculation.

Defendant also seeks to have this Court reach some adverse inference from the fact the officers did not include in their written reports their knowledge of defendant as a suspect in the armed robberies. I suppose defendant wants the Court to conclude that the officers did not, during the traffic stop, recognize defendant as a suspect in the armed robberies and only dug up that information after defendant filed his suppression motion. Defendant, however, offered no evidence to rebut the fact the officers knew about defendant's involvement in the armed robberies at the time of the stop. Officer Jurgensen offered a logical and understandable explanation for why he did not include that information in his report, which is equally plausible for why Officer Del Valle also excluded the information from her report. For the Court to arrive at defendant's nefarious conclusion would require this Court to engage in rank speculation.

Defendant further elicited testimony during the hearing regarding the purpose of the VCAT unit, how often the officers testifying in this case called for drug dogs during traffic stops, and whether it was Officer Del Valle's common practice to accuse drivers

of being nervous (which Officer Del Valle denied). First, defendant does not contest the legality of the traffic stop itself in this case. Second, a drug dog was not used in this case and the frequency of their use is irrelevant to the question of whether there are objective facts that would support the officers conducting a pat-down search of defendant in this case. And the only evidence defendant has of Officer Del Valle "regularly" asking drivers why they are nervous is the fact that Officer Del Valle did so in the McLemore/Rode case. That is hardly a sturdy pattern of conduct upon which to build an inference of established routine conduct.

Defendant elicited testimony from Officer Del Valle that she had seen defendant's vehicle earlier that evening but did not include that fact in her report. It is not clear to me how this detracts from Officer Del Valle's credibility.

Defendant argued that the fact Officer Del Valle called in defendant's name to dispatch and is overheard on the recording saying something like "I want to make sure he is who he claims," shows that she did not actually recognize him to be the person involved in the armed robberies. I do not reach that conclusion. There is nothing inherently inconsistent with Officer Del Valle believing she recognized defendant as a possible suspect in armed robberies and wanting to confirm that he is who he claimed to be. Officer Del Valle testified that she had never before met defendant. She had only received information about defendant from a concerned citizen.

Defendant argues that he did not sound nervous on the recording and there is no objective evidence by way of video to corroborate Officer Del Valle's claim that defendant was acting nervous. Having listened to the recording several times, I am in no position from merely listening to the tone of defendant's voice to reach any conclusion regarding whether it betrays nervousness. What is clear is that the recording reflects Officer Del Valle stating that defendant's hand was shaking and then she asked him what he was nervous about. Although defendant denied being nervous, he did not deny that his hand was shaking and instead focused on talking about his right arm being in a cast. Other than again speculating, there is no factual basis for me to discount Officer Del

6

Valle's sworn testimony that she saw defendant's hand shaking. To the contrary, defendant's failure to specifically deny that his hand was shaking corroborates Officer Del Valle's testimony.

Defendant argued that Officer Del Valle's testimony that defendant was reaching toward the console area "defies logic" because he had to drive and had only one hand with which to do it. There is nothing factual in the record, however, that would establish that defendant could not control the steering wheel with his right hand in a cast, or that he could not have taken both hands off of the wheel briefly to reach over with his left hand. Moreover, defendant did not deny reaching over; rather, he explained the reason he was reaching over was to get paperwork. Finally, Officer Del Valle was captured on the videotape contemporaneously telling another officer he was making obvious movements toward the console. In other words, this is not an explanation given for the first time after officers find incriminating evidence. Accordingly, I credit Officer Del Valle's testimony.

### III. ANALYSIS

The Fourth Amendment forbids unreasonable searches and seizures and usually requires police to obtain a warrant before conducting a search. *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citations omitted). There is an exception to the warrant requirement that permits a limited search for a weapon if there is a reasonable suspicion that the suspect is armed and poses a danger to officers or others. *Terry v. Ohio*, 392 U.S. 1, 29 (1968). "Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing 'might be armed and presently dangerous and criminal activity might be afoot.'" *United States v. Robinson*, 664 F.3d 701, 704 (8th Cir. 2011) (quoting *United States v. Davis*, 202 F.3d 1060, 1063 (8th Cir. 2000)). "In determining whether reasonable suspicion exists, we consider the totality of

7

the circumstances in light of the officers' experience and specialized training." *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "In examining the relevant facts and inferences, we must keep in mind that 'minimally intrusive weapons searches' at traffic stops will more likely be reasonable because of the 'inherent danger' of traffic stops." *United States v. Shranklen*, 315 F.3d 959, 962 (8th Cir. 2003) (quoting *United States v. Menard*, 95 F.3d 9, 11 (8th Cir. 1996)).

A vehicle's driver is lawfully seized during a valid traffic stop. *Brendlin v. California*, 551 U.S. 249, 256 (2007). Officers may order a driver to exit the vehicle in the interests of officer safety. *Maryland v. Wilson*, 519 U.S. 408, 413-15 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977). During a routine traffic stop, police officers "may order out of a vehicle both the driver and any passengers [and] perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 118 (1998) (citing *Mimms*, *Wilson*, and *Terry*). *See also Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (holding that to justify a pat-down of an occupant during a traffic stop, the officer "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.") The "sole justification" of a pat-down search is "the protection of the police officer and others nearby." *Terry*, 392 U.S. at 29. The *Terry* Court concluded that for the protection of the police officer, he may search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual." *Id*. at 27. *See also United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015).

Here, defendant does not claim the officers lacked probable cause to stop his vehicle. In this case, the focus is solely on the officer's pat-down of defendant during the traffic stop when it was still at a point where "the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *United States v. Sanders*, 510 F.3d 788, 790 (8th Cir. 2007) (quoting *Wilson*, 519 U.S. at 414). Thus, the sole issue before the Court is whether the officers

8

had a reasonable suspicion to believe defendant may be armed and dangerous. In making this assessment, the Court must employ an objective test. *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). In determining whether reasonable suspicion exists, the Court considers "the totality of the circumstances in light of the officers' experience and specialized training." *Id*. This includes facts such as the "time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995) (citations omitted). Also relevant are those inferences and deductions made by officers under the particular circumstances, since law enforcement officials are "trained to cull significance from behavior that would appear innocent to the untrained observer." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987). The level of suspicion necessary to justify a protective pat-down search "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause." *Roggeman*, 279 F.3d at 578 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015) (internal citation omitted). Whether a frisk was supported by reasonable suspicion is a mixed question of law and fact. *Roggeman*, 279 F.3d at 577.

With these general principles in mind, I now turn to the facts in the instant action. *United States v. Oliver*, 550 F.3d 734, 735 (8th Cir. 2008) (noting that determining whether an officer had reasonable suspicion to believe a person was armed and dangerous is a "fact-intensive issue of law"). Here, officers lawfully stopped defendant late at night (almost 11:00 p.m.), in an area lit only by streetlights. Defendant was seen by Officer Del Valle to be making movements toward the center of the car and continued these movements while officers approached the car. Defendant appeared nervous in that his hands were shaking. Officer Jurgensen smelled marijuana emanating from defendant's

9

car. Officers recognized defendant was a suspect in armed robberies. When ordered out of the car, defendant protested and acted reluctant to exit the car.

Considering the facts collectively, I believe a reasonable officer would have reasonable suspicion that defendant may be armed and dangerous sufficient to justify a pat-down search for the safety of the officers. The traffic stop occurred at night in an area lit by some street lights. *See*, *e.g.*, *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005) (fact that encounter took place at 1:00 a.m. in a poorly lit area added to officers' reasonable concern for their safety); *Shranklen*, 315 F.3d at 962 (noting the inherent danger of traffic stops); *Roggeman*, 279 F.3d at 578 (holding that the fact that a traffic stop takes place at night in poorly lit area legitimately increases concerns about officer safety).

Defendant made furtive movements in the car as he was being stopped and after he had been stopped as officers approached his vehicle. Furtive movements by a driver adds to an officer's reasonable suspicion that the suspect may be armed and dangerous. *See*, *e.g.*, *United States v. Sanford*, 813 F.3d 708, 713 (8th Cir. 2016) (finding suspect's furtive movements in car added to reasonable suspicion he may be armed and dangerous); *United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (same); *United States v. Martinez-Cortez*, 566 F.3d 767, 771 (8th Cir. 2009) (same); *Davis*, 457 F.3d at 822 (same); *United States v. Woodall*, 938 F.2d 834, 837 (8th Cir. 1991) (same).

Defendant appeared nervous, as revealed by his shaking hand. Extreme nervousness may bolster an officer's belief that a subject may be armed and dangerous. *See*, *e.g.*, *United States v. Gaffney*, 789 F.3d 866, 870 (8th Cir. 2015) (quoting *United States v. Hanlon*, 401 F.3d 926, 930 (8th Cir. 2005)); *United States v. Robinson*, 119 F.3d 663, 667 (8th Cir. 1997) (finding fact that defendant acted in a nervous manner and would not make eye contact added to reasonable suspicion he might be armed and dangerous).

Officer Jurgensen smelled marijuana. "It is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a

10

Case 6:16-cr-02059-LTS-MAR   Document 25   Filed 03/06/17   Page 10 of 13

drug transaction." *Gaffney*, 789 F.3d at 870 (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005)). *See also United States v. Binion*, 570 F.3d 1034, 1039-41 (8th Cir. 2009) ("An officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed since weapons are often present incident to the drug business." (citing *Robinson*, 119 F.3d at 667)). Defendant argued that this fact cannot be used to justify the pat-down because the officers had already formed a subjective intent to conduct the pat-down search before Officer Jurgensen smelled marijuana. Fourth Amendment analysis is objective, however, not subjective. What matters is what facts were known to the officers at the time of the actual pat-down search that would have led a reasonable officer to believe defendant may be armed and dangerous. That the officers may have already intended to conduct a pat-down search anyway is not relevant to this analysis.

Defendant was reluctant to exit the vehicle. Although the officers had already formed a subjective intent to conduct a pat-down search before defendant displayed a reluctance to exit his car, as previously noted, the Court views the reasonableness of the officer's conduct from an objective viewpoint. Defendant's hesitation and resistance to getting out of his car adds to the totality of the circumstances that would lead a reasonable officer to suspect defendant may be armed and dangerous.

Finally, the officers had knowledge that defendant was a suspect in a series of armed robberies and was reputed to be the person in possession of a firearm. Knowledge of a suspect's reputation or history of being armed gives rise to a reasonable suspicion that the suspect may be armed and dangerous. *See, e.g., United States v. Menard*, 898 F.Supp. 1317, 1322 (N.D. Iowa 1995) (officer's recollection "of a safety report which indicated that [the defendant] might be armed with a pistol" supported a pat-down); *United States v. Hawkins*, No. 2:11–CR–04016–1–BCW, 2014 WL 4265925 at *4 (W.D. Mo. Aug. 28, 2014) (finding officers did not violate the defendant's constitutional rights by conducting a pat-down search when, among other things, they had information from his criminal history that he was known to be armed). If the Court finds that there was

11

adequate evidence for the officers to have reasonable suspicion sufficient to justify a pat-down search without their knowledge that defendant was suspected in armed robberies; then with the knowledge of defendant being an armed robberies suspect, there is no question that the officers were justified in conducting a pat-down of defendant.

It also bears noting, given defendant's particular attack on the credibility of Officer Del Valle, that my findings would remain the same even if I disregarded Officer Del Valle's testimony about furtive movements, shaking hands, and recognizing defendant as a suspect in armed robberies. Analyzing this case from an objective standard, as a court must, the information known to Officer Jurgensen alone was sufficient to justify a pat-down search. Defendant has provided no reason to doubt Officer Jurgensen's credibility. Again, it does not matter for Fourth Amendment analysis whether Officer Jurgensen had already formed the subjective intent to conduct a pat-down search when he approached defendant and asked him to step out of the car. What matters is the knowledge the officer possessed at the time he actually conducted the pat-down search and whether that information would lead a reasonably prudent officer to believe the officer's safety or that of others was in danger. The question then is what did Officer Jurgensen know at the time he conducted the pat-down search. Officer Jurgensen knew: 1) the encounter was a traffic stop late at night in an area lit by overhead street lights; 2) defendant had previously been incarcerated for trafficking in weapons; 3) defendant was a suspect in a string of armed robberies and was believed to be in possession of the firearm used in those robberies; 4) the smell of marijuana was coming from defendant's car; and 5) defendant was reluctant to step out of the car. These facts alone were sufficient to justify the minimally intrusive act of conducting a pat-down of defendant to ensure officer safety during a traffic stop.

Considering the totality of the circumstances, I believe that a reasonably prudent officer would be warranted in believing that the officer's safety or the safety of others may be in danger. *Terry*, 392 U.S. at 27. Accordingly, I believe the officers were authorized to conduct a protective pat-down for officer safety.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's motion to suppress (Doc. 15).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 6th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa