# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. CR16-2059-LTS |
| vs. | ‖ | **ORDER** |
| ISAAC PETER JACKSON, | ‖ | |
| Defendant. | ‖ | |

_____

This matter is before me on a Report and Recommendation (R&R) in which the Honorable C.J. Williams, Chief United States Magistrate Judge, recommends that I deny defendant's motion to suppress. *See* Doc. No. 25.

## I.    BACKGROUND

### A.    Procedural History

On December 13, 2016, the grand jury returned an indictment (Doc. No. 2) against defendant Isaac Peter Jackson (Jackson) charging him with one count of possession of firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).  Jackson filed a motion (Doc. No. 15) to suppress on February 21, 2017.  The Government filed a resistance (Doc. No. 19) on February 24, 2017.  Judge Williams held a hearing on March 1, 2017.  During that hearing, Government Exhibits 1 through 3 were admitted into evidence, which consist of video recordings of the traffic stop (Exhibit 1), police reports (Exhibit 2) and the R&R regarding a motion to suppress in *United States v. McLemore*, 16-CR-2048 and *United States v. Rode*, 16-CR-2050  (Exhibit 3).  Defense Exhibit A was also admitted into evidence, which consists of my order declining to adopt the R&R in plaintiff's Exhibit 3.

Judge Williams issued his R&R (Doc. No. 25) on March 6, 2017. Jackson timely filed his objections (Doc. No. 30) on March 20, 2017. On March 28, 2017, Jackson entered a conditional plea of guilty to Count 1 of the indictment. Doc. No. 34.

## B.    *Relevant Facts*

Judge Williams made the following findings of fact:

> At approximately 10:48 p.m., on November 9, 2016, Waterloo Police Officers Diana Del Valle and Jamie Sullivan were on patrol in a car when they observed another car attempt to turn the wrong way down a one-way street. Defendant was driving that car. Defendant began to turn down the one-way street, realized his mistake, and pulled back into traffic. Officer Del Valle activated the lights on her car to make a traffic stop at about the same time defendant came to a stop at a traffic light. Defendant signaled with his hand that he intended to pull over on the other side of the intersection and Officer Del Valle indicated agreement. Officer Del Valle testified she could see what she described as furtive movements at this time, consisting of defendant appearing to reach over with his left hand toward the center console area. Officer Del Valle saw the same movement again when defendant crossed the intersection and then pulled over to the side of the road.

> Defendant stopped in downtown Waterloo, in an area that was well lit, according to Officer Del Valle. During the traffic stop there were other vehicles passing by on the road. From the video recordings (Exhibit 1), the area appears to be reasonably well lighted, although it is still night.

> Officers Del Valle and Sullivan got out of their patrol car and approached defendant's car, with Del Valle on the driver's side and Sullivan on the passenger's side. As Del Valle approached defendant's car, she again saw defendant reaching toward the center console area with his left hand. She approached the car from a wider angle because she said she had concerns at this time about her safety. Officer Del Valle instructed defendant to show his hands. Defendant responded something to the effect that he was reaching for his insurance or papers. Officer Del Valle advised defendant that he had started down a one-way street, almost hit a car, and then pulled back into traffic. Defendant acknowledged he had made a mistake and realized it was a one-way street.

When she came up to defendant's window and engaged in a conversation with defendant, Officer Del Valle testified she realized she recognized defendant to be someone suspected to have participated in recent armed robberies of stores in the area. Officers Del Valle and Sullivan were part of a VCAT unit, a violent crime unit of the Waterloo Police Department. Officer Del Valle had, in that capacity, been told by a concerned citizen that defendant was involved as a get-away driver in these robberies and possessed the firearm used in these robberies. When Officer Del Valle approached defendant's window, she saw defendant's left hand shaking. His right arm and hand were in a cast. Officer Del Valle asked defendant if he was nervous and mentioned his shaking hand. Defendant denied that he was nervous and mentioned that his right hand was broken. He did not deny that his hand was shaking. At Officer Del Valle's instructions, defendant retrieved his driver's license; his wallet was later found on the passenger's seat.

After obtaining defendant's license, insurance, and rental car receipt, Officer Del Valle moved to the back of defendant's vehicle and called into dispatch to check on defendant. She also called for a backup officer from the VCAT unit and officer Kyle Jurgensen responded and arrived at the scene. Officer Jurgensen joined Officer Del Valle at the back of defendant's car. Officer Del Valle told Officer Jurgensen that defendant was "making obvious movements toward the center of the car." (Exhibit 1). Officer Jurgensen overheard Officer Del Valle call into dispatch and state defendant's name. Officer Jurgensen recognized defendant's name. Officer Jurgensen used to work at the Blackhawk County Jail and remembered defendant as a particularly long-term inmate at the jail who had been in custody for a trafficking in weapons charge. Officer Jurgensen also recalled being informed verbally as a member of the VCAT team that defendant was a suspect in the recent armed robberies of local stores.

When dispatch reported back that defendant was a valid driver, Officer Jurgensen moved toward the driver's door with the intent to have defendant get out of the vehicle in order to conduct a pat-down search of defendant in the interests of officer safety. When officer Jurgensen approached the driver's side of defendant's car, he could smell the odor of marijuana. When Officer Jurgensen asked defendant to step out of the car, defendant objected and became verbally resistant to stepping out of the car. Ultimately, defendant complied. While conducting a pat-down search of defendant, Officer Jurgensen felt a handgun in defendant's waistband.

After securing defendant, Officer Jurgensen removed the handgun, which is the object of the pending indictment. A subsequent search of the vehicle also revealed marijuana and cocaine.

During cross examination of Officers Del Valle and Jurgensen, defendant elicited testimony that Officer Del Valle's and Sullivan's body cameras did not capture any consistent images of defendant or of the interior of the car. Officer Jurgensen's body camera worked initially, but then stopped working at some point; his audio did not work on his car video. Officers Del Valle and Jurgensen also testified that although each stated that at some point during the traffic stop they recognized defendant as a suspect in a string of recent armed robberies, neither officer discussed that fact with the other at the scene and neither included that information in their written reports. Officer Del Valle was not asked why she did not include that information in her written report, but when I asked Officer Jurgensen why he did not include this information in his report, he testified that the investigation into the robberies was ongoing and not his investigation, and so he did not feel it appropriate to include that information in his report.

Doc. No. 25 at 2-4. Judge Williams found both officers to be credible. *Id.* at 4-7.

Jackson objects to several factual findings in the R&R, most having to do with Del Valle's credibility. First, he objects to the finding that he "began to turn down the one-way street" stating that Government Exhibit 1 and Del Valle's testimony indicate that he did not actually turn down the one-way street, but got in the right-hand lane with his turn signal on, then got back into the lane of traffic and proceeded to go straight. He also states that the video evidence disproves Del Valle's statement that Jackson "almost hit that car." Del Valle testified that Jackson did not actually turn onto the one-way street but "got really close to the intersection where it appeared he was going to turn in that intersection the wrong way in a one-way." Doc. No. 27 at 17. The video evidence corroborates this testimony. The video evidence also shows that Jackson was not close to hitting a car because the car that was behind him turned left at the intersection and did not continue in the lane that Jackson merged into. If the vehicle had gone straight, Jackson may have been at risk of hitting it. In any event, Jackson has not alleged a

constitutional violation with regard to the traffic stop itself.  Therefore, whether Jackson began turning onto the one-way street or not has little relevance to the issue before me. This objection is overruled.

Jackson also objects to the finding that Del Valle saw Jackson making movements with his left hand toward the center console of the vehicle.  While she did testify to that, *see* Doc. No. 27 at 7, she later testified that she saw him reaching with his right hand. *Id.* at 19.  Upon questioning from Judge Williams, Del Valle clarified that she meant he had been reaching with his left hand.  *Id.* at 37.  Her police report states he "began reaching his body toward the center console area."  Exhibit 2.  Jackson also points out that Del Valle testified she could not recall which hand Jackson had used to signal if he should pull ahead through the intersection.  *Id.* at 8.  Jackson states nothing in the videos shows any movements of Jackson's hands other than his motion indicating that he was going to cross the intersection to stop.  Finally, he notes that Del Valle can be heard in the video saying, "right hand going down" as they are crossing the intersection.

I find no reason to believe that Del Valle is not credible with regard to her observations of Jackson reaching toward the center console.  While there are some discrepancies regarding which hand Jackson was using, the main point is that he was reaching toward the center console.  Nonetheless, upon realizing her earlier misstatement in her testimony, Del Valle clarified that Jackson had been reaching with his left hand. Her police report also states that Jackson's cast on his right arm "explain[ed] why Jackson's furtive movements were so obvious to me during my approach.  Jackson had to use his left hand to make any hand movements he was trying to make before the stop, making his reach for the center console even more obvious."  *Id.*  She testified that she witnessed this movement when she initially put her lights on behind him, while he was driving across the intersection for the stop and as she was approaching the vehicle.  Doc. No. 27 at 19-20.  The fact that these movements cannot be observed in a fairly dark and grainy video recording is hardly surprising.  It is also insignificant that Del Valle stated

his right hand was "going down" at some point as it is entirely possible that he had reached with both hands. Nothing discredits Del Valle's testimony that she observed Jackson making movements toward the center console of the vehicle. Objections related to the factual findings concerning Jackson's movements are overruled.

Jackson notes that Del Valle did not pull over the vehicle behind him that made a left turn on a red light, but chose to pursue Jackson's vehicle instead. Again, this evidence may be relevant if Jackson had challenged the grounds for the traffic stop, but he did not. This objection is overruled.

Jackson also objects to a factual finding that Del Valle took a wide approach to the vehicle. He notes that the video depicts her car parked at an angle and that she simply got out of her car and came straight for Jackson's open window. I do not find this fact to be particularly significant because it reflects Del Valle's subjective reactions to the circumstances. In other words, it demonstrates that Del Valle was concerned about her safety after observing Jackson make movements toward the center of the vehicle as he was pulling over. As I will explain below, I must evaluate the circumstances based on what a reasonable officer would do in this situation, not what Del Valle did. In any event, the video shows that Jackson pulled his vehicle next to the curb, while Del Valle parked her vehicle away from the curb so that the passenger side of her vehicle was in line with the driver side of Jackson's vehicle. This made for a wider approach to Jackson's vehicle than if she had parked straight behind him. This objection is overruled.

Jackson then describes various parts of the audio from Del Valle's body camera and her testimony. He does not state precisely what factual finding he objects to with regard to this evidence, but is presumably challenging Del Valle's overall credibility. None of his references demonstrate inconsistencies and I have no other reason to believe that Del Valle did not provide credible testimony with regard to her observations that night. These objections are overruled.

Finally, Jackson challenges Jurgensen's credibility regarding his comment that he could smell marijuana when he approached Jackson's vehicle. Jackson points out that Del Valle testified she did not smell marijuana when speaking with Jackson. Doc. No. 27 at 32. Jurgensen testified, "[o]nce I passed the back driver's side window – it was cracked approximately six inches or so – I could smell marijuana coming from the vehicle." *Id.* at 45. Jackson points out that the video shows the window was open the entire time. It is unclear which window he is referencing. Del Valle testified that Jackson's window was open the entire time. *Id.* at 26. Jackson also notes that Jurgensen testified he could be incorrect about whether the driver's window was open when he walked up or whether Jackson rolled it down as he approached. *Id.* at 56. It appears the parties are referring to different windows, as Jurgensen testified only that it was the back window from which he could smell marijuana. In any event, I find no reason to discredit Jurgensen's testimony on this point. This objection is overruled.

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g., Grinder v. Gammon*, 73 F.3d

793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III.    DISCUSSION

Jackson argues that the officers lacked reasonable suspicion to believe he was armed and dangerous to justify a pat-down search based on the following: (1) Del Valle is not credible, (2) the stop should have concluded when Del Valle verified Jackson's license was valid, (3) even if Del Valle's statements are credited, Jackson's actions did not justify a pat-down search and (4) the officers' purported reliance on an intelligence report about Jackson's suspected involvement in armed robberies is a post-hoc justification.

Law enforcement officers are justified in making a "limited, warrantless search for the protection of [themselves] or others nearby in order to discover weapons if [they have] a reasonable, articulable suspicion that the person may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). "Courts are required to apply an objective test to

resolve the question whether reasonable, articulable suspicion justified a protective search." *Id.* "Under this objective standard, the 'officer need not be absolutely certain that the individual is armed, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (citing *Terry*, 392 U.S. at 27). Reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause." *Id.* (citing *United States v. Solkolow*, 490 U.S. 1, 7 (1989)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (quoting *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994)). "[The court] must consider the totality of the circumstances in light of the officers' experience and specialized training." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012).

Judge Williams concluded that a reasonable officer would have had reasonable suspicion to justify a pat-down search based on the following facts:

- Officers lawfully stopped defendant late at night (almost 11:00 p.m.), in an area lit only by streetlights

- Del Valle observed defendant to be making movements toward the center of the car and continued those movements while the officers approached the car

- Defendant appeared nervous in that his hands were shaking

- Jurgensen smelled marijuana emanating from defendant's car

- Officers recognized defendant was a suspect in armed robberies

- When ordered out of the car, defendant protested and acted reluctant to exit the car.

Doc. No. 25 at 9-10. I will consider Jackson's objections as follows in conducting my de novo review:

A. Whether Del Valle is credible based on my findings in the *McLemore/Rode* case

B. Whether there was reasonable suspicion to extend the length and scope of the traffic stop after verifying Jackson's license

C. Whether there was reasonable suspicion to support the protective pat-down search

## A. *Del Valle's Credibility Based on Previous Testimony*

Jackson argues Del Valle is not credible because I previously found she was not credible in another case. I do not find this reason persuasive. In the *McLemore/Rode* case provided in Defendant's Exhibit A, I found that Del Valle was not credible because she testified she could not read a temporary registration sticker on a vehicle from a mere seven to ten feet away even though the sticker was plainly visible from the video evidence and the vehicle was in a well-lit area. *See* Defendant's Exhibit A. Moreover, Del Valle's purported inability to read the temporary registration sticker was the only reason provided for the traffic stop. *Id.*

Here, Jackson does not contest the validity of the stop,[1] but argues there was not reasonable suspicion to justify extending the stop or the pat-down search. Both issues are fact specific. Del Valle's testimony as to the previous situation has no bearing on her testimony regarding this situation. I decline to find Del Valle incredible on these facts based on her testimony concerning other unrelated facts. Her credibility as to other circumstances of this stop will be addressed in later sections of this opinion discussing those circumstances.

---

[1] *See* Doc. No. 15-1 at 4 (admitting "the action of Mr. Jackson's car attempting to turn the wrong way down a one way street and then coming back into traffic is likely a reasonable traffic stop.").

## B.    Length of Stop

Jackson argues that Del Valle unreasonably extended the stop after she learned that his license was valid.  "After stopping a vehicle, an officer has the authority to ask the driver what his or her destination and purpose is, check the driver's license and registration, or request that the driver step out of the vehicle." *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) (citing *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)).  The "officer may expand the scope of a traffic stop if he [or she] has reasonable suspicion of other criminal activity based on the totality of the circumstances and informed by his [or her] training and experience." *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009) (citing *United States v. Guerrero*, 374 F.3d 584, 596 (8th Cir. 2004)).  "The officer's reasonable suspicion cannot be, however, just a mere hunch or based on circumstances which 'describe a very large category of presumably innocent travelers.'" *United States v. Jones*, 269 F.3d 919, (8th Cir. 2001) (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)).  "Whether a particular detention is reasonable in length is a fact-intensive question, and there is no *per se* time limit on all traffic stops." *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2007).  "During an investigative stop, officers should employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the stop." *United States v. Donnelly*, 475 F.3d 946, 953 (8th Cir. 2007) (citing *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999) (internal quotations omitted)).

Del Valle was not required to end the stop after verifying Jackson's license.  Del Valle testified that she had observed Jackson turn toward the center console as she was pulling him over and had observed his hand shaking *prior to* verifying his license.  She also testified that she recognized Jackson's name from a prior investigation involving a string of armed robberies when he identified himself.  Jackson challenges Del Valle's credibility regarding each of these circumstances.

With regard to the "furtive movements," Jackson argues the movements were not captured on video and, in any event, the reason for the movements was resolved when Del Valle observed Jackson's wallet on the passenger seat and insurance on the passenger floor, which Jackson asked to reach for when Del Valle requested them. *See* Doc. No. 27 at 22, 24-25. Jackson also argues Del Valle's testimony on these movements is not credible because she would not have been able to observe these movements based on her height and the vehicle she was driving. I disagree. While the movements cannot be observed on the dash cam video (a fairly dark and grainy video), there is nothing to suggest that Del Valle would not be able to see the driver in front of her reaching or moving toward the center console. Indeed, her extemporaneous comments on the video, such as "right hand going down" suggest that she had no difficulties seeing Jackson's movements. While she may not have been able to see what he was reaching for, that is precisely the reason his movements created reasonable suspicion. The objects in the passenger seat and on the passenger floor may explain those movements, but based on the totality of the circumstances, they may not dispel all suspicion that a reasonable officer may have in this situation based on his or her training and experience.

The Eighth Circuit has found that similar circumstances contributed to reasonable suspicion, which would justify extending the length and scope of a traffic stop. *See United States v. Morgan*, 729 F.3d 1086, 1090 (8th Cir. 2013) (noting "furtive gestures" by the driver of vehicle supported a "reasonable belief that [the driver] was dangerous."); *United States v. Martinez-Cortes*, 566 F.3d 767, 771 (8th Cir. 2009) (finding that furtive movements by driver gave officers "reason to suspect . . . that the occupants might be a risk to officer safety unless detained"); *United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994) ("Although there is a possible innocent explanation for each of the factors, as a totality they created a reasonable suspicion justifying further investigation reasonable in scope."). I find that the furtive movements observed by Del Valle contributed to reasonable suspicion to justify an extension of the length and scope of the stop.

Next, Jackson argues Del Valle's testimony that he appeared nervous is not credible. He states there was no nervousness or shakiness in his voice. He also points out there is nothing to corroborate Del Valle's statement that his hand was shaking. Jackson did not deny that his hand was shaking, but responded to Del Valle by stating he was not nervous and explaining that his hand was messed up, referring to his right hand in the cast. He contends that he had been trying to get his ID out of his wallet with his one functional hand. While nothing corroborates Del Valle's testimony that Jackson's hand was shaking, nothing discredits it aside from Jackson's statements that he was not nervous.

Jackson also suggests Del Valle is not credible because her body camera was "deliberately positioned up to the sky." Doc. No. 30-1 at 5. He contends that based on Del Valle's height and her testimony that she positioned the camera in the center of her chest, the camera should have captured all of the events in Jackson's car. He points out that the only body camera that arguably worked as designed was on the officer who was called to take photographs and was not a member of the VCAT team. Notably, the videos from Del Valle's and Jurgensen's dash cams do not show Del Valle or Jurgensen adjusting their body cams in any way. The fact that Del Valle's observations of Jackson's behavior were not captured on video does not mean they did not occur. As noted above, I find no reason to discredit Del Valle's testimony as to this point. Moreover, the fact that these observations were subjective does not change the analysis. *See United States v. Bloomfield*, 40 F.3d 910, 918-19 (8th Cir. 1994) (noting nervousness and other subjective perceptions may support reasonable suspicion). I find that the observation of Jackson's shaky hand and apparent nervousness contributed to Del Valle's reasonable suspicion to justify further investigation. *See United States v. Cash*, 378 F.3d 745, 748 (8th Cir. 2004 )("Cash's extreme nervousness toward the officers and her furtiveness in concealing the shopping bag form the officers were significant factors which we have previously held may establish reasonable suspicion for a *Terry* stop and frisk."); *Preston*, 685 F.3d

13

at 689 ("In examining the relevant facts and inferences, [the court] must keep in mind that 'minimally intrusive weapons searches' at traffic stops will more likely be reasonable because of the 'inherent danger' of traffic stops.").

Finally, Jackson argues that Del Valle's purported recognition of his connection with an armed robbery investigation is not credible. Del Valle testified that when she walked up to Jackson she recognized him and remembered information she had received regarding his suspected involvement in a string of armed robberies. Doc. No. 27 at 10. Defense counsel was not made aware of Del Valle's purported reliance on this knowledge as a reason for the pat-down search until an hour before the suppression hearing. At that time, the Government disclosed an investigative report signed by Del Valle that was based on information from a concerned citizen. *See* Doc. No. 27 at 27-28. This report was not offered into evidence. It does not state that the robberies were armed robberies. *Id.* at 53. Moreover, it is unclear who provided this report to the Government, as it was neither Del Valle nor Jurgensen. *Id.* at 27, 53. Del Valle admitted she did not include this information in her police report for the stop and did not discuss it with Jurgensen or Sullivan after learning Jackson's identity at the stop. *Id.* She did testify that she had spoken to them about Jackson in weeks prior to the stop. *Id.* Jurgensen testified that he was aware of Jackson's suspected involvement in the armed robberies at the time he responded to the stop, but had not seen the report signed by Del Valle. *Id.* at 42. However, he knew that Del Valle was aware of Jackson's suspected involvement in the robberies because she had been part of that investigation. *Id.* at 56.

While the details surrounding Del Valle's purported reliance on this information are somewhat concerning, I ultimately find that there is no clear evidence that discredits her testimony on this point. The Eighth Circuit has found that an officer's knowledge of information regarding a suspect's involvement in another case is sufficient to create reasonable suspicion. *See Preston*, 685 F.3d at 690 (citing with approval *United States v. Walker*, No. 96-1124, 1996 WL 686160, at *1 (8th Cir. Dec. 2, 1996) for the

proposition that a "safety warning" posted at police headquarters two or three weeks before a stop created reasonable suspicion for a pat-down); *United States v. Menard*, 898 F. Supp. 1317, 1322 (N.D. Iowa 1995) (finding reasonable suspicion justified a pat-down where one officer reminded another of a "safety report" which had indicated defendant might be armed with a pistol).

Based on the totality of the circumstances, I find that there was reasonable suspicion for Del Valle to extend the stop beyond verifying Jackson's license. While initiating the stop, she observed Jackson turn or make movements toward the center console. She also observed his hand shaking when she approached the vehicle. Finally, she recognized Jackson as a potential suspect in another investigation regarding a string of armed robberies. Together, these circumstances created reasonable suspicion for the officers to continue investigating beyond the traffic violation.

To the extent Jackson argues that the protective search unreasonably extended the traffic stop, I disagree. "Generally, a stop should last no longer than is necessary to confirm or dispel the officer's suspicions." *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (citing *Jones*, 269 F.3d at 924). The video evidence demonstrates that Jurgensen arrived within five minutes of Del Valle's request. *See* Government Exhibit 1. They briefly discussed the situation before walking up to the vehicle, asking Jackson to step out of the vehicle and performing the protective search. I find that these actions did not unreasonably prolong the stop. *See Morgan*, 729 F.3d at 1090 ("In determining whether a detention is too long to be justified as a *Terry* stop, we consider whether the officers diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.") (internal quotations omitted).

### C.     Protective Search

Finally, Jackson argues the protective pat-down search itself was not supported by reasonable suspicion. "To justify a patdown of the driver or a passenger during a traffic

stop . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Jackson argues that none of his actions justified the pat-down search. He highlights the fact that he was compliant with Del Valle's instructions, his behavior was not erratic, he did not sound nervous and he had a valid license. While all of that may be true, the standard requires me to consider whether a reasonable officer would have had a reasonable suspicion that the person was armed and dangerous based on the totality of the circumstances. *See Preston*, 685 F.3d at 689 ("Officers may conduct a protective pat-down search for weapons during a valid stop . . . when they have objectively reasonable suspicion that a person with whom they are dealing 'might be armed and presently dangerous and criminal activity might be afoot.'"); *Roggeman*, 279 F.3d at 578 ("In order to determine whether the facts and circumstances surrounding a *Terry* search and seizure give rise to reasonable suspicion, the totality of the circumstances – the whole picture – must be taken into account.") (internal quotations omitted). Jackson has highlighted only some of the circumstances. Other circumstances included Del Valle's observations of Jackson turning toward the center console, Jackson's hand shaking, Del Valle's and Jurgensen's recognition of Jackson as a potential suspect in recent armed robberies, Jurgensen's detection of the smell of marijuana emanating from the vehicle and Jackson's reluctance to step out of the vehicle. Jackson argues these factors are either not credible or should not be considered for other reasons.

Jackson argues that a shaky hand alone is insufficient to support a pat-down search. He cites several cases in which courts relied on additional circumstances besides shaking hands or other signs of nervousness to conclude there was reasonable suspicion to justify the search. The Eighth Circuit has expressed hesitancy regarding nervousness as a basis for reasonable suspicion. *Wood*, 106 F.3d at 947 ("It is certainly not uncommon for most citizens – whether innocent or guilty – to exhibit signs of nervousness when confronted by a law enforcement officer."). *United States v. Guerrero*, 374 F.3d 584,

590 (8th Cir. 2004) (noting that a suspect's nervousness is "of limited significance" as the Eighth Circuit has held that "it cannot be deemed unusual for a person to exhibit signs or nervousness when confronted by an officer."); *United States v. Beck*, 140 F.3d 1129, 1139 (8th Cir. 1998) ("We conclude that any suspicion associated with [defendant's] nervous demeanor during the traffic stop to be, at best, minimal."). Indeed, if Jackson's shaky hand was the only factor in support of reasonable suspicion, this would be an entirely different case.

As noted above, however, there is also evidence that Del Valle observed Jackson making furtive movements toward the center console, that she and Jurgensen had information involving him as a suspect in another case that involved a firearm, that Jurgensen smelled marijuana coming from the vehicle and that Jackson resisted the request to step out of the vehicle. Moreover, the Eighth Circuit has stated that "factors that individually may be consistent with innocent behavior, when taken together, can give rise to reasonable suspicion, even though some persons exhibiting those factors will be innocent." *Stewart*, 631 F.3d at 457. *See also United States v. Hightower*, 716 F.3d 1117, 1121 (8th Cir. 2013) ("Even if a single factor identified by the district court, when viewed in isolation, did not support a finding of reasonable suspicion, our precedent prohibits such a fragmented approach to reasonable suspicion.").[2]

Jackson also argues the furtive movements and the officers' purported recognition of him as a suspect in a string of armed robberies should be discredited. With regard to the furtive movements, Jackson distinguishes the cases cited in the R&R and notes the furtive movements in those cases were more specific (under the seat or leaning over to

---

[2] It appears that Jackson's shaking hand and nervousness were never communicated to Jurgensen. Therefore, I will not consider this a factor supporting reasonable suspicion for the pat-down search. *See United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008) ("The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the stop when there is some communication between the officers.")

the floorboard) or that other known circumstances (prior criminal history, recent arrest for drugs, no knock warrant due to firearms) provided a more persuasive context for the furtive movements to cause concern. *See* Doc. No. 30-1 at 7-8. For the reasons described above, I find no reason to discredit Del Valle's testimony that she observed Jackson making furtive movements toward the center console. While furtive movements may give rise to more concern in other cases, the totality of the circumstances here make them no less significant when viewed from the perspective of a reasonable officer. I find that the furtive movements supported the reasonable suspicion required to conduct a protective search.

With regard to the officers' purported recognition of him, Jackson argues this reason is not credible because: (1) the report at issue does not state the alleged robbery was armed or provide any information suggesting that the alleged robbery was armed, (2) Jackson did not have sufficient opportunity to challenge the report given that it was produced an hour before the hearing and he was not able to fully cross-examine the witnesses about it, (3) the officers' purported reliance on this information as the real reason for the pat-down was only revealed at the suppression hearing, (4) neither Del Valle nor Jurgensen mentioned this information in their reports on this incident, (5) Del Valle and Jurgensen did not discuss this information prior to performing the pat-down and (6) nothing about the stop suggested that Del Valle recognized Jackson. As noted above, I agree that the circumstances surrounding this report are concerning. Nothing corroborates the legitimacy of the report or the officers' recognition of Jackson aside from the officers' testimony.

However, nothing clearly discredits the report or the officers' testimony about it. Moreover, even if the report was not considered, the other factors discussed above would be sufficient to find that reasonable suspicion supported the protective search. *See United States v. Cash*, 378 F.3d 745, 748 (8th Cir. 2004 )("Cash's extreme nervousness toward the officers and her furtiveness in concealing the shopping bag form the officers were

significant factors which we have previously held may establish reasonable suspicion for a *Terry* stop and frisk."); *Preston*, 685 F.3d at 689 ("In examining the relevant facts and inferences, [the court] must keep in mind that 'minimally intrusive weapons searches' at traffic stops will more likely be reasonable because of the 'inherent danger' of traffic stops.").

Finally, Jackson challenges Jurgensen's observations, including (1) his recognition of Jackson's name associated with the armed robbery investigation and as a previous inmate at the Black Hawk County Jail and (2) his report of smelling marijuana coming from the vehicle. First, I note that any knowledge or observations from other officers can be imputed to him as the searching officer, so long as that knowledge or those observations were communicated to him. *See Thompson*, 533 F.3d at 969 ("The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the stop when there is some communication between the officers."). Jurgensen testified that he heard Jackson's name when Del Valle reported it over the radio to dispatch. Doc. No. 27 at 44. Jurgensen also testified that he recognized Jackson's name from his two prior associations with him (as an inmate at the Black Hawk County Jail for weapons trafficking and the armed robbery investigation) at that time.[3] *Id.* Del Valle then communicated that she saw Jackson making furtive movements toward the center console. *Id.* Based on this information alone, Jurgensen had reasonable

---

[3] Jackson challenges Jurgensen's recollection of him serving time at the Black Hawk County Jail, which occurred sometime in the late 2000s. Doc. No. 27 at 41. Jurgensen testified that Jackson was there for 425 days for trafficking in stolen weapons. *Id.* at 42. He knew this because he previously worked at the jail. *Id.* at 40-41. On cross-examination, Jurgensen testified he recalled Jackson had been there for more than a year, but did not know the exact number of days until he looked it up. He testified that he did know "at the time" that Jackson was there for a trafficking in weapons offense. *Id.* at 47. It is unclear whether Jurgensen meant he knew about Jacksons' trafficking offense at the time he worked at the jail or whether he recalled that offense at the time of the stop. For this reason, I find Jurgensen's recognition of Jackson from the Black Hawk County Jail to be of minimal significance.

suspicion to justify the pat-down search. Indeed, Del Valle and Jurgensen made the decision he would perform the pat-down search at this time.

Additionally, Jurgensen smelled marijuana coming from the vehicle as he approached it. He also noted Jackson was "very resistive" when asked to step out of the vehicle, questioned the reason for asking him to step out and was "kind of argumentative." *Id.* at 45. While the latter two circumstances occurred after the decision was made to perform the pat-down search, they occurred prior to the search itself and can be considered. *See Terry*, 392 U.S. at 21-22 ("it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"); *United States v. Tinnie*, 629 F.3d 749, 752-53 (7th Cir. 2011) (finding that frisk did not begin at time officer made decision to frisk and therefore defendant's silence when asked twice about whether he had any weapons before performing frisk contributed to officer's reasonable suspicion that defendant was armed and dangerous).

The circumstances known to Jurgensen at the time of the pat-down search include: Jackson's furtive movements toward the center console, knowledge of Jackson's suspected involvement in a string of armed robberies, Jurgensen's observation of the smell of marijuana emanating from the vehicle and Jackson's reluctance to step out of the vehicle.[4] Based on the totality of the circumstances, I find that a reasonably prudent

---

[4] Judge Williams also determined that the time of night (around 11:00 p.m.) in an area lit only by streetlights contributed to reasonable suspicion to justify the pat-down search. I disagree. With regard to the time and place of the stop, I note that while late, it was not dark. *See* Doc. No. 27 at 38 (in which Del Valle testified, "it was one of the most lit areas because it's downtown" and "[t]here's plenty of lighting."). Moreover, this factor tends to be relevant when an officer is alone. *See e.g.*, *Roggeman*, 279 F.3d at 578 ("In its previous decision, this Court has concluded that the fact that a suspect was detained late at night by a lone officer in a poorly lit area adds to the reasonableness of an officer's conclusion that the person he has detained should be frisked for weapons."). Here, Del Valle's partner was with her and standing by the passenger side of the vehicle. *See* Government Exhibit 1.

officer would have had reasonable suspicion that Jackson was armed and dangerous so as to justify a protective pat-down search.

## IV.    CONCLUSION

For the reasons set forth herein, defendant's objections (Doc. No. 30) are **overruled**. I hereby **accept** Judge Williams' Report and Recommendation (Doc. No. 25) with these limited modifications: (1) the time and place of the traffic stop do not support reasonable suspicion to extend the length and scope of the traffic stop or to conduct a protective pat-down search, and (2) that Del Valle's observation of Jackson's shaking hand did not support reasonable suspicion for the protective pat-down search. Defendant's motion to suppress (Doc. No. 15) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 19th day of April, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE